UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA BLAND,

    Plaintiff,

    v.

PREMIER NUTRITION CORPORATION,

    Defendant.

Case No. 19-cv-00875-RS

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

## I. INTRODUCTION

Plaintiff Patricia Bland requests that this case be remanded back to state court under the home-state controversy exception to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). In support of her motion, Bland has provided evidence from the primary retailers of Joint Juice in California supporting the reasonable inference that more than two-thirds of proposed class members are California citizens. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for October 3, 2019 is vacated. For the reasons set forth below, this motion is granted.

## II. BACKGROUND

Bland alleges that defendant Premier Nutrition ("Premier") misleadingly labelled, packaged, marketed, and advertised its Joint Juice product. She seeks to represent the class of plaintiffs "who purchased in California any Joint Juice product between June 21, 2016 and the date notice is disseminated." Bland filed her action on January 15, 2019 in Alameda County Superior Court. Premier removed it to federal court a month later. Premier is no stranger to actions

of this sort; it is simultaneously defending actions filed by plaintiffs in nine other states asserting identical factual allegations as to consumers in those states. Each plaintiff is pursuing their claims in the Northern District of California.

On March 21, 2019, the parties stipulated to an extended briefing schedule for the present motion to remand, in order to allow Bland to conduct jurisdictional discovery. In support of this motion, Bland offers three pieces of evidence.[1]

First is information provided by Premier to Bland about retailers that sold Joint Juice in California between June 21, 2016 and January 19, 2019.[2] Premier stated that it "*primarily* sells Joint Juice wholesale to club stores (*e.g.*, Costco and Sam's Club) and other food, drug, and beverage channels (*e.g.*, Wal-Mart), which then sell Joint Juice to customers" and attached sales data provided by those three retailers. Exhibit A at 5 (emphasis added).

Second is a letter from Walmart stating that 12,379 of the 12,840 (approximately 96 percent) Sam's Club members who purchased Joint Juice at a California store between June 21, 2016 and January 19, 2019 had memberships associated with a California address. The later also says all www.samsclub.com sales of Joint Juice in California during that period were to a member with a California address, and all www.walmart.com sales were shipped to a California address.[3]

Third is a letter from Costco stating that 208,647 of the 228,110 (approximately 91 percent) Costco members who purchased Joint Juice at a California store in fiscal years 2015

---

[1] Bland has submitted Administrative Motions to Seal the jurisdictional discovery and her Reply, which quotes the discovery. As the Designating Party, Premier bears the burden of demonstrating why the motions should be granted. Premier, however, has not filed declarations in support of the motions. In fact, Premier quotes some of the discovery in its own Response, which was not filed under seal. The Administrative Motions to Seal are therefore denied.

[2] While Bland's proposed class period is ongoing, for the purposes of determining whether federal CAFA jurisdiction exists, the end date to be used is the date that the complaint was filed: January 19, 2019. 28 U.S.C. § 1332(d)(7).

[3] Walmart Inc. owns both Sam's Club and Walmart stores. Sam's Club requires a membership with an associated mailing address in order to shop at a retail location or on the website; it is these addresses that Walmart Inc. analyzed to provide the data it did about Sam's Club sales. Because Walmart stores have no such membership requirement, the company could only provide data about mailing addresses associated with online sales and nothing about in-store sales.

through 2019 had memberships associated with a California personal address. An additional 4,230 (approximately 2 percent) were associated with a California business address.

### III.  LEGAL STANDARD

Under CAFA, district courts may exercise jurisdiction over a class action where the amount in controversy exceeds $5 million and where minimal diversity exists. 28 U.S.C. § 1332(d)(2). CAFA strongly favors federal jurisdiction over interstate class actions. *See Brinkley v. Monterey Financial Services, Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017). There are, however, several exceptions which may divest a district court of jurisdiction even if these two requirements are met. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). The home-state controversy exception applies where the primary defendants and greater than two-thirds of the putative class members are citizens of the state where the action was originally filed. *Brinkley*, 873 F.3d at 1121 (citing 28 U.S.C. § 1332(d)(4)(B)).

The party seeking remand bears the burden of providing "*some* facts in evidence from which the district court may make findings regarding class members' citizenship." *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 884 (9th Cir. 2013) (emphasis added). While the evidentiary burden "should not be exceptionally difficult to bear," *id.* at 886, "[a] jurisdictional finding of fact should be based on more than guesswork," *id.* at 885. The record, including "reasonable inferences from facts in evidence," should simply support a finding that, by a preponderance of the evidence, more than two-thirds of class members were citizens of the state whose courts the party seeks to remand to at the time of removal. *Id.* at 886.

### IV.  DISCUSSION

The only defendant in this action is Premier, which is incorporated in Delaware and has its principal place of business in California. It is thus the "primary defendant" for purposes of the home-state exception and a citizen of California. 28 U.S.C. § 1332(c)(1). The remaining issue, on which parties focus their briefing, is whether two-thirds of the proposed class members are California citizens.

In support of her motion, Bland offers evidence that 96 percent of those who purchased Joint Juice in a California Sam's Club during the proposed class period, 91 percent of those who purchased it at a Costco store, and 100 percent of those who purchased it on www.samsclub.com or www.walmart.com had a California mailing address. As to the Costco, Sam's Club, and www.samsclub.com purchasers, she offers that those individuals renewed their memberships annually using a California address. She argues that it can reasonably be inferred from this information that two-thirds of proposed class members were California citizens.

Premier's first response is that the home-state exception inquires as to the *citizenship*, not the residency, of putative class members. The Ninth Circuit has declined to adopt both the presumption that residence is prima facie evidence of citizenship,[4] and the suggestion that evidence of residency can never establish citizenship. *Mondragon*, 736 F.3d at 886. In other words, in this circuit, residency does not equal citizenship, but it does not *not* equal citizenship. Given the facts in evidence in individual cases, Ninth Circuit courts have both inferred and declined to infer California citizenship from California residence. *Compare Rodriguez v. Instagram, LLC*, No. 12-cv-06482, 2013 WL 3732883 (N.D. Cal. July 15, 2013), *with Aviles v. Quick Pick Express, LLC*, No. 15-cv-05214, 2015 WL 5601824, at *3 (C.D. Cal. Sept. 23, 2015). The latter cases tend to those where the proponent of remand has produced *no* factual evidence of class member citizenship, relying entirely on a class definition to invoke the exception, *cf. Mondragon*, 736 F.3d at 884, or where the opponent has produced evidence that at least some of the proposed class members are *not* citizens of the state in whose courts the proponent seeks refuge, *cf. King v. Great American Chicken Corp.*, 903 F.3d 875, 879 (9th Cir. 2018).

This case falls into neither category. Bland has produced evidence, beyond her proposed class definition, of class member residency, which is in turn probative of class member

---

[4] Bland invokes this presumption to bolster her argument, even though the Ninth Circuit explicitly declined to adopt it. She also cites the presumption of continuing domicile. That presumption, however, applies only where citizenship, as opposed to residency, has already been established. That is not the case here.

citizenship. Neither is there any evidence in the record of proposed class members who are not California citizens.[5] It is certainly true that, among a class of California consumers, there will be the occasional college student, vacation home-owner, or member of the military who maintains legal citizenship out-of-state but purchased Joint Juice in California. *Cf. Mondragon*, 736 F.3d at 844. That these aberrations comprise anywhere close to one-third of California Joint Juice purchasers, however, is less likely than not. It is much more reasonable to infer that, if 91 to 100 percent of Joint Juice purchasers in California were California residents, at least 67 percent of them were also California citizens.

Premier also points out that Bland has not produced evidence of the total size of the proposed class. While that is true, it fails to disrupt the reasonable inference that greater than two-thirds of Joint Juice purchasers in California were California citizens. Premier itself represented that it sells Joint Juice "primarily" to wholesale retailers like Walmart, Costco, and Sam's Club. Exhibit A at 5. Bland has provided discovery from each of these retailers, and each retailer's data is consistent: Joint Juice purchasers in California were overwhelmingly California residents. To find that the data from these three retailers cannot be extrapolated would perversely incentivize Premier to make a partial disclosure of its sales in order to be able to claim that nothing can be gleaned from the data it provided.

That California residents purchasing Joint Juice are overwhelmingly California citizens is further evinced by facts particular to the retailers at issue. Costco and Sam's Club are membership stores; in order to shop there, individuals must maintain a membership annually. These are thus not stores where occasional, out-of-state visitors are likely to shop. Furthermore, the data submitted by Premier itself in support of its Motion to Remove this case to federal court showed that only 4.5 percent of Joint Juice retail locations in California are within twenty miles of the Mexico or Oregon borders. There are numerous Walmart stores in Mexican cities directly across

---

[5] This is not meant to suggest that there is any factual burden on Premier—that burden belongs solely to Bland—but rather that the universe of reasonable inferences that can be drawn from Bland's factual evidence could be limited by factual evidence to the contrary.

the border. That droves of out-of-state citizens traversed the border to buy Joint Juice is thus not a reasonable inference. It is more likely than not that the vast majority of Joint Juice purchasers in California were both residents and citizens of this state.

## V.  CONCLUSION

Bland has produced data to support the application of the home-state controversy exception to CAFA. It is reasonable to infer that a group comprised overwhelmingly of California residents is also greater than two-thirds California citizens, and that the data provided can be extrapolated to the class as a whole. In a more efficient world, a state court would not be adjudicating Bland's action while, in parallel, a federal court adjudicates nine other actions against the same defendant alleging the same facts. As the home-state exception divests the federal courts of jurisdiction, however, efficiency does not alter the remand analysis. This action is therefore remanded to Alameda County Superior Court for proceedings not inconsistent with this opinion.

**IT IS SO ORDERED**.

Dated: September 23, 2019

_____
RICHARD SEEBORG
United States District Judge